Booker T. Brooks v. Commissioner.
Brooks v. Commissioner
Docket No. 43750.
United States Tax Court
T.C. Memo 1954-80; 1954 Tax Ct. Memo LEXIS 165; 13 T.C.M. (CCH) 583; T.C.M. (RIA) 54200; June 29, 1954, Filed Booker T. Brooks, 650 Rhodes Avenue, Akron, Ohio, pro se. James A. Scott, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax and penalties against petitioner as follows: Penalties
Year
Income Tax
Sec. 294(d)
Sec. 291(a)
1945
$2,380.11
$595.03
1946
1,680.46
420.10
1947
1,562.46
1948
695.55
173.89
1949
691.65
172.91
1950
728.80
$116.61
182.20
The questions presented *166 are (1) whether respondent properly determined petitioner's gross income for the years 1945 to 1950, inclusive, by means of the "expenditures" method; (2) whether in computing petitioner's net income for 1948 and 1949, respondent properly limited the standard deduction to $500; (3) whether petitioner is liable for penalties under section 291(a) for the years 1945, 1946, 1948, 1949, and 1950; and (4) whether petitioner is liable for a penalty under section 294 (d) for the year 1950. Findings of Fact Petitioner, a resident of Akron, Ohio, filed an income tax return for the calendar year 1947 with the then collector of internal revenue for the eighteenth district of Ohio. This return stated that a return had been filed for the year 1946. Petitioner failed to file any returns for the years 1945, 1948, 1949, and 1950. During the taxable years petitioner owned or operated three business: the Rotary Bowling Alley, the Theatrical Grille, and the recreation room of the Cosmopolitan Political Club. He had no records or books from which a determination of his net income for any of the years involved could be made. Respondent resorted to the "expenditures" method in order to determine petitioner's *167 taxable income for the years in question. Respondent secured from loan companies and banks in Akron records of many loans and loan repayments made by petitioner during the years in question. After subtracting the loans from the loan repayments in each year, respondent added estimated living expenses for petitioner and his family for each year. The following schedule shows the amount of gross income which respondent thus determined petitioner should have reported, the amount of gross income which petitioner did report in 1947, and the resultant understatement of gross income for each year: Gross
Under-
Income
Gross
statement
Per
Income
of Gross
Year
notice
Reported
Income
1945
$13,621.90
$13,621.90
1946
12,863.03
12,863.03
1947
12,449.01
$5,431.80
7,017.21
1948
10,377.81
10,377.81
1949
10,357.70
10,357.70
1950
10,302.08
10,302.08
Petitioner has eight children for whom he was allowed dependency exemptions for each of the years involved. Petitioner was married and was divorced not earlier than 1950. Respondent allowed him a standard deduction of $1,000 for 1950 but limited the standard deduction for 1948 and 1949 *168 to $500. The following schedule shows the net income determined by respondent for the years involved and the amount of net income which petitioner reported for 1947: Net
Income per
Net
Notice of
Income
Year
Deficiency
Reported
1945
$13,121.90
1946
12,363.03
1947
11,949.01
$4,931.80
1948
9,877.81
1949
9,857.70
1950
9,302.08
Respondent relied upon information from the Akron Police Department that petitioner was known to be engaged in questionable or illegal activities. Petitioner was never arrested for gambling. Respondent determined that petitioner spent $3,900 during each of the years 1945 to 1949, inclusive, and $4,300 during 1950 for the entertainment of himself and his family. Neither petitioner nor his wife drinks. Petitioner has not had a vacation in 15 years. Petitioner's only entertainment expense consisted of sending his children to the movies about once a week. His total entertainment expense for each year did not exceed $200. Respondent properly used the "expenditures" method in determining petitioner's income for the years involved. Petitioner received gross income for the years involved as determined by respondent except *169 that the amount expended for annual entertainment expenditures did not $200exceed. Petitioner's failure to file returns for 1945, 1948, 1949, and 1950 was due to negligence and not to reasonable cause. Petitioner's failure to file a declaration of estimated tax for 1950 was due to negligence and not to reasonable cause. Opinion Making every possible allowance for the fact that petitioner appeared at the hearing without counsel, that respondent made no effort to cross-examine him, and that there was virtually no probative admissible evidence offered on respondent's behalf, there yet remains the presumption of correctness to which respondent's determination is entitled and which, in order to sustain petitioner, we must find to have been overcome by this record. In that respect the only categorical statement made by petitioner which, since it was made on the stand under oath and not in any way discredited, we accept, is that his entertainment expenses as determined by respondent were excessive. We have incorporated in our findings the figure which we think should be employed for that item. We cannot, however, find that petitioner has sustained his burden with respect to the *170 other amounts of income attributed to him. Since no books and records or other evidence as to petitioner's income or expenditures were available, respondent resorted to an "expenditures" method in order to determine petitioner's gross income from the three businesses he owned or operated. Such method consisted of adding an estimate of annual living expenses for petitioner and his family to the excess of petitioner's loan repayments over new loans during each year. Petitioner does not contend that his expenditures came from accumulated funds on hand at the beginning of the period, and under such circumstances, the method adopted is not unreasonable. See Joseph Calafato, 42 B.T.A. 881, affd. (C.A. 3) 124 Fed. (2d) 187; Halle v. Commissioner, (C.A. 2) 175 Fed. (2d) 500, certiorari denied 338 U.S. 949. But in computing petitioner's net income for 1948 and 1949, respondent improperly limited petitioner's standard deduction under section 23(aa)(1)(A) [1] to $500. Respondent contends on brief that "it is reasonable to assume that if returns had been filed in those years, petitioner and his wife would have filed separate returns in view *171 of their divorce in 1950." We think this assumption both unreasonable and unwarranted, particularly since respondent allowed a standard deduction of $1,000 for 1950, the year the divorce was supposed to have taken place. To avoid the penalties, petitioner must show that his failure to file any returns at all and his failure to file a declaration of estimated tax in 1950 were "due to reasonable cause and not due to willful neglect." Sections 291(a), 294(d), I.R.C. Petitioner, upon whom the burden rests, see West Side Tennis Club v. Commissioner, (C.A. 2) 111 Fed. (2d) 6, certiorari denied 311 U.S. 674, *172 contends that he followed the advice of an accountant in regard to his tax liability. Cf. Hatfried, Inc. v. Commissioner, (C.A. 3) 162 Fed. (2d) 628. For this to be a defense, however, it must be shown that "sufficient information was made available to the accountant to enable him to come to an intelligent conclusion," Tarbox Corporation, 6 T.C. 35, 37, and that the accountant is "qualified to advise or represent the taxpayer in the premises." Rene R. Bouche, 18 T.C. 144, 149. Petitioner admits on brief to the possibility of having annual income amounting to as much as $4,800. An income tax return obviously should have been filed. Section 51(a), I.R.C. The accountant was not produced as a witness. Possibly there was no accountant employed, or at any rate no direct communication between petitioner and the accountant on tax matters for any years except 1946 and 1947. If there was, we must assume that petitioner failed to supply him with all the information necessary for filing returns. In either event, the penalties, except for 1946, should be sustained. Tarbox Corporation, supra; Rene R. Bouche, supra. *173 We have been unwilling, however, to find that petitioner failed to file a return for 1946 in view of the inconclusive character of the revenue agent's testimony and the existence of the statement on the 1947 return, which was introduced by respondent himself, that a return had been filed for the prior year. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(aa) Optional Standard Deductions for Individuals. - (1) Allowance. - In the case of an individual, at his election a standard deduction as follows: (A) Adjusted Gross Income $5,000 or More. - If his adjusted gross income is $5,000 or more, the standard deduction shall be $1,000 or an amount equal to 10 per centum of the adjusted gross income, whichever is the lesser, except that in the case of a separate return by a married individual, the standard deduction shall be $500.↩